IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No. CR07-235-S-EJL |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM ORDER** |
| **CHRISTOPHER JESSE TORRES,** | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Before the Court today is Defendant Christopher Jesse Torres's ("Defendant") motion to suppress physical evidence. The Court has reviewed the memoranda filed with this motion and in response to this motion. An evidentiary hearing was held on February 13, 2008, where the government presented one witness. The defense did not call any witnesses. After reviewing all of the material presented in the memoranda and the evidentiary hearing, the Court finds as follows:

**FACTUAL BACKGROUND**

On August 28, 2007, Officer Larry Hemmert ("Officer Hemmert") of the Caldwell Police Department made contact with the defendant. During this encounter, Officer Hemmert seized a firearm that was in Defendant's possession. Defendant seeks to suppress that firearm with this motion.

At approximately 9:00 pm on August 28, 2007, Officer Hemmert received information

from Corporal Hoadley that the Defendant was in possession of a firearm.[1]  Corporal Hoadley had obtained this information from a Mr. Munoz and his grandson, Aaron Tovar, earlier in the day. This information corroborated a report from a probation officer that the Defendant was in possession of a gun.[2]  The information from these two sources, coupled with the fact that the Defendant is a documented member of the Westside Loma Loco gang, a convicted felon, and had been involved in violent actions in the past led Officer Hemmert to further investigation.[3]

Approximately one- half  hour after receiving the information from Corporal Hoadley, Officer Hemmert began surveillance in Caldwell in the Ashton subdivision at a location know to be frequented by the Defendant.  Officer Hemmert was accompanied by Officer Tabor and performed the surveillance from a marked police vehicle.  After approximately 45 minutes of surveillance the Defendant left the house with a companion and walked in the general direction of the police vehicle where Officer Hemmert was located.

---

[1] At the evidentiary hearing there was some dispute with respect to the times all of the events related to this matter took place.  The Court is confident that all times made reference to in this Order are accurate.  Nevertheless, any discrepancies with respect to the specific timing of these events are non-outcome determinative and any deviations in time would not alter the Court's determination of this matter.

[2] The probation officer who provided the information that the Defendant was in possession of a gun was not the Defendant's probation officer, but was the probation officer for a third party who is not directly involved in these proceedings.

[3] The Westside Loma Loco gang is a violent street gang that operates in Canyon County, Idaho.  The violent altercations made reference to above include a fight with an officer while the officer was attempting to arrest the Defendant and the Defendant attempted to pull a knife on the officer.  During the struggle with the officer the Defendant also instructed his companions to shoot the officer, even though it was later proven none of the companions possessed a firearm.

After walking towards the police vehicle, the Defendant and his companion turned and began to walk down a side street in the subdivision. The officers drove the police car towards the two men and approached them from behind. The officers placed a spot light on the two men and they separated. Officer Tabor followed the unidentified companion, and Officer Hemmert exited the vehicle to approach the Defendant.

As Officer Hemmert exited the vehicle he made a verbal signal to gain the attention of the Defendant.[4] The Defendant turned and made eye contact with Officer Hemmert. The Defendant then positioned himself in what Officer Hemmert described as a "shooter's stance" and reached behind his back. The Defendant's actions led Officer Hemmert to draw his weapon and order the Defendant to show his hands.

The Defendant initially complied with Officer Hemmert's request, but then reached back down a second time. Officer Hemmert reissued his order that the Defendant keep his hands up and the Defendant complied. Officer Hemmert made contact with the Defendant and asked him if he had a weapon. The Defendant responded that he did not.

Officer Hemmert performed a *Terry* pat-down search and felt what he believed to be a firearm in the Defendant's back left pocket. As Officer Hemmert felt the handgun, the Defendant pulled away from the officer and attempted to reach into his pocket where the gun was located. The Defendant's actions led Officer Hemmert to place the Defendant on the ground, arrest him and handcuff him. Officer Hemmert then removed the gun from the back of Defendant's pants

---

[4]Officer Hemmert does not recall the exact context of his verbal command, but believes he either shouted "Torres" or "Torres stop." The distinction is insignificant as Officer Hemmert had reasonable suspicion to effectuate a *Terry* stop which will be address fully in the Analysis section of this Order.

and discovered that it was a loaded .380 semi-automatic pistol, with the hammer cocked and ready to fire.  The gun did not have a safety mechanism, there was a round in the chamber and the magazine contained seven additional rounds.

## ANALYSIS

Defendant's motion to suppress is based on the claim that the firearm was taken in violation of the Fourth Amendment.  Defendant bases these claims on the argument that the police officer never observed the Defendant engage in any type of illegal behavior before making a stop and therefore the stop and subsequent search were illegal.  The Government contends that there was reasonable suspicion and that the stop and search were legal.

<u>Initial Stop</u>

Pursuant to *Terry v. Ohio,* 392 U.S. 1 (1968), a police officer may stop a person and conduct a brief investigation if the officer has reasonable suspicion that the person may be involved in criminal activity.[5]  "When discussing how reviewing courts should make reasonable-suspicion determinations, we have said repeatedly that they must look at the 'totality of the circumstances' of each case."  *U.S. v. Arvizu,* 534 U.S. 266, 272 (2002).  In reviewing the totality of the circumstances to determine if the stop or intrusion was warranted "the police officer must be able to point to specific and articulable facts, which taken together with rational inferences from those facts, reasonably warrant that intrusion."  *Terry* at 21.

---

[5]Defense counsel cited the Court to *Price v. Sery,* F.3d, WL 170205 (9th Cir. 2008) during the evidentiary hearing.  The Court reviewed the case and finds the requirement of an objective standard for determining "reasonable belief" has been met here.  The Court also finds that the equal standard for a determination of "reasonable belief" and "probable cause" as articulated in *Price* has also been satisfied.  The Court also points out that *Price* is not directly on point as the issue in that case was the reasonable use of lethal force, which is not an issue in the current proceeding.

MEMORANDUM ORDER                   Page 4 of  9

The Court applies these standards and determines that there was reasonable suspicion to effectuate a stop in this case. Officer Hemmert received information from two informants that the Defendant was in possession of a gun.[6] A probation officer had informed law enforcement that Defendant was in possession of a gun. Defendant also had a documented history of being an active member of the Westside Loma Loco gang and had been involved in violent altercations in the past. The Defendant was also a convicted felon. These specific and articulable facts, when taken together, create reasonable suspicion that the Defendant was in possession of a firearm and justify Officer Hemmert seeking out the Defendant to verify if he truly was in possession of a firearm.

When Officer Hemmert first located the Defendant, he intended to effectuate a consensual encounter even though he had sufficient information to justify reasonable suspicion and conduct a *Terry* stop. Officer Hemmert's intention of engaging in a consensual encounter changed due to Defendant's actions. Once the Defendant and his companion separated from each other in an apparent attempt to elude the police officers, this created a potentially dangerous situation for the police officers. This was due to the fact that the contact was being made at night, in an area known to be frequented by gang members and with actual knowledge that at least one gang member was in the area. The background information on Defendant and these circumstances create a situation where an officer would have reasonable suspicion to perform a *Terry* stop to ascertain if the Defendant was in fact armed.

---

[6] *Alabama v. White,* 496 U.S. 325, 325 (1990) explains that it is appropriate to use an informant's statement to assist in establishing reasonable suspicion if the informant's statement is corroborated by other sources of information.

MEMORANDUM ORDER           Page 5 of 9

The Court concludes, when viewing the totality of the circumstances, that Officer Hemmert had a sufficient level of reasonable suspicion, from an objective viewpoint, to effectuate a stop in accordance with Fourth Amendment protections as currently outlined by case law.

Terry Search

A police officer "is not entitled to seize and search every person whom he sees on the street or of whom he makes inquiries.  Before he places a hand on the person of a citizen in search of anything, he must have constitutionally adequate reasonable grounds for doing so.  In the case of the self-protective search for weapons, he must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous." *Sibron v. New York*, 392 U.S. 40, 64 (1968).  The test for whether a weapons search was reasonable is an objective one, the officer need not demonstrate that he or she was in actual fear.  *United States v. Baker*, 47 F.3d 691 (5th Cir. 1995).  Probable cause is not required for a pat-down of a suspect for weapons if it is independently justified by reasonable suspicion that the suspect may be armed. *United States v. Flippin*, 924 F.2d 163, 166 (9th Cir. 1991).

Reasonable suspicion "is formed by specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity."  *United States v. Thompson*, 282 F.3d 673 (9th Cir. 2002) (citing *United States v. Rojas-Millan*, 234 F.3d 464, 468-69 (9th Cir. 2000)).  An officer is entitled to rely on his training and experience in drawing inferences from the facts he observes, but those inferences must also "be grounded in objective facts and be capable of rational explanation."  *United States v. Mariscal*, 285 F.3d 1127 (9th Cir. 2002) (citing *United States v. Lopez-Soto*, 205 F.3d 1101, 1105 (9th Cir. 2000) and *United States v. Twilley*, 222 F.3d 1092,

1095 (9th Cir. 2000)).

"The justification for a *Terry* 'frisk' [is] primarily [for] the officer's self-protection, and that all searches must be 'reasonably related in scope to the justification for their initiation.'" *United States v. Davis*, 482 F.2d 893, 906-07 (9th Cir. 1973) (quoting *Terry v. Ohio*, 392 U.S. at 29). "Consequently...the permissible scope of a *Terry* "frisk" is limited to a patting down of the "stopped" person's outer clothing, for no more is required to detect the presence of weapons that might be available for immediate use against the officer." *Id.* "The sole justification of the search . . . [under *Terry*] is the protection of the police officer and others nearby...." *Id.* at n. 36 (noting that the *Terry* search is a "self-protective search for weapons." citing *Sibron*, 392 U.S. at 64). "[The frisk] must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby. . . ." *Id.* at n. 37 (citing *Terry v. Ohio*, *supra*). The officer is entitled only "to conduct a carefully limited search of the outer clothing of . . . [legitimately "stopped" persons] in an attempt to discover weapons which might be used to assault him." *Id.* Once an officer has "reasonably concluded that the person whom he had legitimately stopped might be armed and presently dangerous" the officer may conduct a limited search for weapons. *Pennsylvania v. Mimms*, 434 U.S. at 111-12. The standard for a frisk stated in *Terry* asks "whether the facts available to the officer at the moment of the seizure or the search warrant a man of reasonable caution in the belief that the action was appropriate." *Id.* (citations and quotations omitted).

Officer Hemmert had justifiable reasons to believe that the Defendant was armed and dangerous. The officer had received information from two informants and a probation officer that Defendant was armed. Defendant also had a history of being involved with a violent gang in the

area and had engaged in violent conduct with police officers on previous occasions.  The Defendant was also a convicted felon and considered armed and dangerous by the Nampa police department.  The Defendant positioned himself in a shooter's stance and reached as though he was going for a weapon.[7]  These actions caused Officer Hemmert to draw his weapon and tell the Defendant to keep his hands up.[8]  It is reasonable to infer from these facts that Defendant possessed a firearm and was a danger to the officer.

Once Officer Hemmert had effectuated the stop and made contact with the Defendant, Officer Hemmert asked if the Defendant was carrying a weapon.  The Defendant told the officer that he did not have a weapon.  Officer Hemmert still performed a *Terry* pat down search by only feeling the outside of the Defendant's clothing.  The pat down search was appropriate as a reasonably cautious individual would believe it possible based on earlier reports that the Defendant was in possession of a firearm and posed a danger to the officer.  During the outside the clothing pat down, Officer Hemmert felt what he believed to be a gun in Defendant's back left pocket.  Officer Hemmert asked the Defendant to get down on the ground so that he could disarm him.  When the Defendant was on the ground, Officer Hemmert removed a loaded .380 semiautomatic pistol from the Defendant's lower left pants pocket.
The circumstances surrounding this encounter with the Defendant provide reasonable suspicion to

---

[7]Officer Hemmert relates that the Defendant took a shooter's stance and acted as though he was reaching for a weapon.  It is appropriate to take this information into consideration pursuant to *United States v. Mariscal*, 285 F.3d 1127 (9th Cir. 2002) where the Court stated that it is appropriate for an officer to rely on his training in making inferences associated with the establishment of reasonable suspicion.

[8]In *U.S. v. Merritt,* 695 F.2d 1263, 1273 (10th Cir. 1982) that Court determined that "the use of guns in connection with a stop is permissible where the police reasonably believe they are necessary for their protection."

believe that the Defendant was armed and dangerous. Officer Hemmert reasonably relied on his training and experience in determining that the Defendant was reaching for a weapon. The scope of the pat down search performed by Officer Hemmert was limited in scope to only determine if the Defendant was armed for the protection of the officer. There is no evidence that any of the actions taken by Officer Hemmert were inappropriate.

## ORDER

Based on the foregoing, and the Court being fully advised in the premises, it is **HEREBY ORDERED** that:

1. Defendant's Motion to Suppress Physical Evidence (Docket No. 16) is **DENIED.**

**SO ORDERED.**



DATED:  February 19, 2008

~~Honora~~ble Edward J. Lodge
U. S. District Judge